# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

MARY DELOIS MORSS,

      **Plaintiff,**

-vs-                                **Case No.  6:06-cv-235-Orl-22DAB**

COMMISSIONER OF SOCIAL
SECURITY,

      **Defendant.**

_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title

42 United States Code Section 405(g), to obtain judicial review of a final decision of the

Commissioner of the Social Security Administration (the Commissioner) denying her claim for

Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the

Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings

and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED.**

## I. BACKGROUND

### A. Procedural History

Plaintiff filed for SSI benefits on December 18, 2002.  R. 61.  She alleged an onset of

disability on November 5, 2002[1], due to anemia, weakness and low energy, dizziness, and rheumatoid

---

[1]Plaintiff had previously applied for and been denied benefits. R. 16, 68.

arthritis.  R. 15.  Her application was denied initially and upon reconsideration.  R. 38, 41.  Plaintiff

requested a hearing, which was held on June 15, 2005, before Administrative Law Judge Robert D.

Marcinkowski (hereinafter referred to as "ALJ").  R. 297-318.  In a decision dated September 22,

2005, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision.

R. 12.  Plaintiff timely filed a Request for Review of the ALJ's decision.  R. 10.  The Appeals Council

denied Plaintiff's request on January 3, 2006.  R. 6.  Plaintiff filed this action for judicial review on

February 24, 2006.  Doc. No. 1.

### B.      Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision.  By way of summary,

Plaintiff complained of weakness, dizziness, and low energy; that she could not stand for long before

needing to sit; and being too tired all of the time.  R. 68; 76.  After reviewing Plaintiff's medical

records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from fibromyalgia and lupus,

which were "severe" medically determinable impairments, but were not impairments severe enough

to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No.

4.  R. 18.  The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to

perform light work, but she could not perform her past relevant work.  R. 22.  In making this

determination, the ALJ found that Plaintiff's allegations regarding her limitations were not totally

credible for the reasons set forth in the body of the decision.  R. 20.  Based upon Plaintiff's RFC, the

ALJ determined that she could not perform past relevant work.  R. 21.  Plaintiff had past relevant

work as a teacher's aide for special needs children and as a housekeeper.  R. 77.  Considering

Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids),

20 C.F.R. Pt. 404, Subpt. P, App. 2, and concluded that Plaintiff could perform work existing in

significant numbers in the national economy.  R. 22-23.  Accordingly, the ALJ determined that

Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision.

R. 22-23.

Plaintiff now asserts three points of error.  First, she contends that the ALJ erred in assessing

the consultative examination of Dr. Perdomo.  Second, she asserts that the ALJ erred by improperly

applying the pain standard and in evaluating her credibility.  Third, she argues that the ALJ erred by

relying upon the grids, rather than obtaining vocational expert (VE) testimony, because Plaintiff

suffered non-exertional impairments.  Because the ALJ misinterpreted the opinion of the examining

physician Dr. Perdomo as indicating Plaintiff could perform the full range of light duty, the decision

of the Commissioner is **REVERSED**.

## *II.  STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct

legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings

are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The

Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C.

§ 405(g).  Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely

create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable

person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th

Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S.

at 401).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm,

even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir.

2004).  "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of

the [Commissioner.]" *Id.* (internal quotation and citation omitted); *Dyer v. Barnhart*, 395 F.3d 1206,

1210 (11th Cir. 2005).  The district court must view the evidence as a whole, taking into account

evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord, Lowery*

*v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine

reasonableness of factual findings).

### A.      RFC and the consultative examination.

Plaintiff claims that the ALJ should not have found her able to perform light work based on

the limitations assigned by Dr. Perdomo, an examining physician, precluding the performance of the

full range of light work.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's

remaining ability to do work despite her impairments.  20 C.F.R. § 404.1545(a); *Lewis v. Callahan*,

125 F.3d 1436, 1440 (11th Cir. 1997).  The focus of this assessment is on the doctor's evaluation of

the claimant's condition and the medical consequences thereof.  *Id.*  Substantial weight must be given

to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to

do otherwise.  *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d),

416.927(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments

is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not

inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Where a treating physician has merely made conclusory

statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings

and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

A consulting physician cannot supply substantial evidence simply by contradicting reports about the underlying facts or offering unfounded speculation. *Garrison v. Heckler*, 765 F.2d 710, 713 (7th Cir. 1985); *Martin v. Secretary of HEW,* 492 F.2d 905 (4th Cir. 1974).  When the consulting physician adds new information or perspectives, that may be substantial evidence. *See Garrison*, 765 F.2d at 713; *Diaz v. Secretary of HEW,* 613 F.2d 1194 (1st Cir. 1980).  If the treating physician's views do not tell the agency what tasks the claimant can and cannot perform, consulting physicians are often able to provide information about the claimant's physical impairments, given her limitations. *See Garrison*, 765 F.2d at 713.  The opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician. *Broughton v. Heckler,* 776 F.2d 960, 962 (11th Cir. 1985); *Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.").

Plaintiff contends that the ALJ misconstrued Dr. Perdomo's December 2003 recommendation and evaluation and the reasons for his recommendation that the claimant should avoid repetitive use of her hands which was based on the pain with such motions, rather than grip strength or manipulative limitations. Doc. No. 16 at 13-14. Plaintiff contends that the pain limitations from her polyarthralgias were well-documented throughout all of her medical records and support Dr. Perdomo's recommendation.  The Commissioner contends that the ALJ properly discounted Dr. Perdomo's findings that Plaintiff should avoid repetitive use of her hands (R. 20, 268-69), because these conclusions were inconsistent with Dr. Perdomo's examination six months earlier, he reported

Plaintiff's grip strength and fine manipulation were normal, and he based his opinions on very limited records and subjective reports and there were no x-ray records to support his opinions.  R. 21.

Based on a careful reading of the complete record and specifically a comparison of Dr. Perdomo's May 2003 report and December 2003 report, it is clear that the ALJ erred in interpreting Dr. Perdomo's report.  The ALJ noted that during Dr. Perdomo's December 12, 2003 consultative examination of Plaintiff – six months after his initial examination in May 2003 – his impression and recommendations were unchanged.  R. 17.  The ALJ noted that previously in May 2003, Dr. Perdomo examined the claimant for complaints of right shoulder, hand, and knee pain; his impressions were polyarthralgia with a questionable history of rheumatoid arthritis and lupus erythematous and anemia by history.  R. 17.

> Dr. Perdomo's December 2003 recommendations stated:
>
> No records of x-rays were available for review with very limited records available in reference to her rheumatoid arthritis.  Patient should be referred back to her rheumatologist and mixed connective tissue disorder should be considered, as well as evaluation for her new onset ecchymotic skin lesions.  She could stand or walk for six hours in an eight hour workday with normal breaks.  Patient had no sitting limitations.  She should *avoid repetitive bending* and can occasionally lift, but should limit the weight to no more than ten pounds.  *Repetitive use of the hands should be avoided*, although patient has no manipulative limitations in regards to grasping or fine manipulations.  *Patient should avoid repetitive bending*, stooping, or crouching.  She could benefit from physical therapy and home exercise program for general conditioning.

R. 269 (emphasis added).  Dr. Perdomo's December 2003 opinion was completely consistent with his May 2003 opinion that recommended in pertinent part: "[Plaintiff] could perform well in light duty work *avoiding* standing for more than six hours a day, *repetitive bending, use of the hands* or lifting over fifteen to twenty pounds."  R. 259 (emphasis added).

The ALJ subsequently described Dr. Perdomo's December 2003 opinion:

The undersigned accords considerable weight to Dr. Perdomo's May 12, 2003 opinion that the claimant could perform well in light duty work which *entails standing for 6 hours a day, bending and using the hands frequently, and lifting over 15-20 pounds.* He reported that grip and fine manipulation and gait were normal.  This assessment is consistent with the DDS medical expert's findings.

However, the undersigned does not find Dr. Perdomo's determinations of December 12, 2003 credible only with regard that the claimant should avoid repetitive bending, could occasionally lift and no more than 10 pounds, and should avoid repetitive use of hands.  These conclusions are inconsistent with his earlier examination six months prior and are not supported by objective medical findings of record.  In the same report, Dr. Perdomo reported that the claimant's grip strength and fine manipulation were normal.  He reported that the claimant was alert and oriented x 3, was walking without any difficulties and did not require an assistive device for ambulation, was sitting comfortably during the examination, and was able to get on and off the examining table without any problems.  Dr. Perdomo based his opinions on very limited records and subjective reports, and there were no x-ray records available to support his opinions.

R. 20-21 (emphasis added).  There are several flaws in the ALJ's analysis of Dr. Perdomo's opinion.

First, the ALJ misread or misquoted Dr. Perdomo's May 2003 opinion as stating that Plaintiff could

"perform well in light duty work which entails standing for 6 hours a day, bending and using the

hands frequently."  That is precisely the opposite of Dr. Perdomo's opinion that Plaintiff "should

avoid repetitive bending . . . . Repetitive use of the hands should be avoided . . . [and] Patient should

avoid repetitive bending, stooping."  R. 269.

Second, Dr. Perdomo's December 2003 opinion is absolutely consistent with his earlier May

2003 opinion and almost quotes from it.  Dr. Perdomo's May 2003 recommendation stated that

Plaintiff "could perform well in light duty work *avoiding* standing for more than six hours a day,

repetitive bending, use of the hands, or lifting over fifteen to twenty pounds."  R. 259.

Third, as Plaintiff argues, in rejecting Plaintiff's limited hand use, the ALJ mistakenly focused

on Dr. Perdomo's report that Plaintiff's "grip strength and fine manipulation were normal."  R. 20.

The limitation of "no repetitive hand use" Dr. Perdomo imposed was not based on a lack of grip strength or manipulation, but on Plaintiff's tenderness in the metacarpal phalangeal (MCP) joints of both hands, which was documented in both the May and December 2003 examination reports.

Fourth, Dr. Perdomo's findings are supported by objective medical findings of record from Plaintiff's treating physicians who diagnosed her with rheumatoid arthritis and (potential) lupus by 2003. In May 2003, Dr. Farmer, Plaintiff's treating physician, noted Plaintiff's ANA was positive and diagnosed her with Lupus. R. 250. In June 2003, Plaintiff was diagnosed with "Lupus vs. Sjogren's syndrome" and arthritis. R. 249. In July 2003, Dr. Farmer again noted Plaintiff was experiencing joint pain and tenderness in her forearms, and diagnosed her with myalgia. R. 248. By December 2003, Dr. Farmer diagnosed Plaintiff with arthritis and "?Lupus" and referred her to a rheumatologist. R. 247. Plaintiff was also treated with Vioxx throughout the latter half of 2003. R. 252, 249. Plaintiff was unable to afford or find a rheumatologist who would accept Medicaid initially, but eventually was seen in April 2004 by Dr. Pancorbo, who unequivocally diagnosed her with Lupus and Sjogren's syndrome and she was prescribed new medications. R. 278. Dr. Pancorbo noted that Plaintiff's lupus seemed to be more of the discoid type lupus which mainly affected skin and joints. R. 278. Lab tests showed abnormal antibody levels which supported the diagnosis. R. 279.

In addition, although Dr. Perdomo based his opinions on what the ALJ described as "very limited records and subjective reports, and no x-rays" (R. 21), his physical examination noted tenderness over the right shoulder with reduced range of motion, and tenderness in the MCP joints of both hands and both knees. R. 258-59. Dr. Perdomo, in a conservative fashion and acknowledging that there were no records before him documenting arthritis or lupus, diagnosed Plaintiff with "polyarthralgia with a questionable history of rheumatoid arthritis and lupus erythematous." R. 259.

Even the reviewing physician, in June 2003, noted that Plaintiff's symptoms were credible and consistent with arthritis, and included an RFC limitation for reaching due to shoulder pain.  R. 263.

The ALJ's rejection of Dr. Perdomo's consulting opinion was not based on substantial evidence.  Based on the ALJ's improper rejection of the Dr. Perdomo's opinion, the ALJ improperly assessed Plaintiff's credibility[2] as to her limitations and failed to obtain the testimony of a VE to determine the impact of Plaintiff's nonexertional impairments on her ability to perform other work in the national economy.

Plaintiff seeks reversal and an award of benefits, however, an award of benefits is not appropriate in this case, particularly because the extent of Plaintiff's limitations have not been determined and she was able to perform janitorial work (albeit not successfully) for seven months in 2004.  R. 302.  On remand, if there are insufficient records from a treating rheumatologist, a consultative examination by a rheumatologist should be sought and Plaintiff's limitations, including those that are nonexertional, should be considered by the ALJ.

### IV.  CONCLUSION

For the reasons set forth above, the ALJ's decision is not consistent with the requirements of law or supported by substantial evidence.  Accordingly, the Court **REVERSES AND REMANDS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

---

[2]The ALJ held that Plaintiff was not fully credible in part based on "reports of . . . the examining practitioners," one of whom was Dr. Perdomo.  R. 20.The ALJ also noted that Plaintiff "failed to report her work activity to Social Security (Exhibit 3F/2)" but the citation is to a medical record that does not mention work.  *See* R. 169.  To the contrary, Plaintiff *did* report her employment from June 2004 to January 2005.  R. 119 (undated).  In addition, she freely admitted to working at the hearing (R. 302-03), and SSA records contained her earnings information.  R. 63, 303.  Plaintiff's other forms were all completed in 2003 before her seven-month work attempt in 2004 (R. 58-60, 67-91, 102-05, 108-10).

**DONE** and **ORDERED** in Orlando, Florida on February 20, 2007.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

-10-